UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
APR 30 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| 1. NETHANIEL CHAIM BLUTH | ) |
| 2. SHOSHANA ROSALYN BLUTH | ) |
| 3. EPHRAIM BLUTH | ) |
| 4. TSIPORA BATYA BLUTH REICHER | ) |
| 5. ISAAC MENAHEM BLUTH | ) |
| 6. YIGAL AMIHAI BLUTH | ) |
| 7. ARIEH YEHUDA BLUTH | ) |
| 8. CHANINA SAMUEL BLUTH | ) |
| 9. ABRAHAM BLUTH | ) |
| 10. JOSEPH BLUTH | ) |
| Plaintiffs, | ) |
| v. | ) |
| ISLAMIC REPUBLIC OF IRAN, IRANIAN MINISTRY OF INFORMATION AND SECURITY, IRANIAN REVOLUTIONARY GUARDS CORPS | ) |
| Defendants. | ) |

Case: 1:15-cv-00665
Assigned To: Kessler, Gladys
Assign. Date: 4/30/15
Description: PI/Malpractice (B Deck)

## COMPLAINT

Plaintiffs through undersigned counsel bring this action against the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Revolutionary Guards Corps, jointly and severally, and allege as follows:

1.   This action is brought by Plaintiffs for serious injury and emotional distress



1

suffered as a result of the March 7, 2002 terrorist attack directed at a classroom full of students studying Torah. The bombing was carried out by Hamas, a terrorist organization in which Defendants provided material support or resources including cover, sanctuary, technical assistance, explosive devices, and training.

## JURISDICTION AND VENUE

2. Plaintiffs bring this action pursuant to the Anti-Terrorism Amendments to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*

3. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1330(a), 1331, and 1605A.

4. Defendants are subject to suit in the courts of the United States pursuant to 28 U.S.C. § 1605A, an exception to the Foreign Sovereign Immunities Act allowing suit against foreign state sponsors of terror, for acts of torture, extrajudicial killings, and other terrorist actions committed by said states and their agents.

5. Pursuant to 28 U.S.C. § 1605A, jurisdiction is proper where either the injured or an immediate relative claimant was a United States national at the time of the terrorist attack in question.

6. Each of the named Plaintiffs are U.S. nationals who were living in the community of Atzmona in the Gush Katif region of the Gaza Strip, the Israeli city of Modiin, or other places in Israel at the time of the bombing.

7. Private actions for personal injury and related torts brought by Plaintiffs against foreign state sponsors of terrorism under 28 U.S.C. § 1605A(c) are uniquely and wholly Federal versions of what are traditionally state-law causes of action. These purely Federal tort actions

were signed into law on January 22, 2008. Cf. P.L. 110-181 § 1083 (2008).

8. Plaintiffs bring their claim within 28 U.S.C. § 1605A(b)(2)'s statute of limitations of "10 years after the date on which the cause of action arose."

9. Venue in this Court is proper in accordance with the provisions of 28 U.S.C. § 1391(f)(4), which provides in pertinent part that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## PLAINTIFFS

10. Plaintiff Nethaniel Chaim Bluth is a United States National who was nineteen (19) years old at the time of the March 7, 2002 attack. As a result of the terrorist attack, Nethaniel Bluth suffered multiple wounds from shrapnel, a gunshot wound to the chest, ripping of both ear drums, hearing loss in both ears, tinnitus, and permanent scars all over his body. Additionally, Nethaniel Bluth suffered extreme emotional distress as a result of the attack and personally witnessing the death of his friends, including Asher Markus, Arik Krogliak, and Eran Picard.

11. Plaintiff Shoshana Rosalyn Bluth is and was a United States national at the time of the March 7, 2002 attack and is the mother of Nethaniel Bluth. She suffered severe emotional distress from the physical injuries to her son Nethaniel Bluth.

12. Plaintiff Ephraim Bluth is and was a United States national at the time of the March 7, 2002 attack and is the father of Nethaniel Bluth. He suffered severe emotional distress from the physical injuries to his son Nethaniel Bluth.

13. Plaintiff Tsipora Batya Bluth Reicher is and was a United States national at the time of the March 7, 2002 attack and is the sister of Nethaniel Bluth. She suffered severe emotional distress from the physical injuries to her brother Nethaniel Bluth.

14.     Plaintiff Isaac Menahem Bluth is and was a United States national at the time of the March 7, 2002 attack and is a brother of Nethaniel Bluth. He suffered severe emotional distress from the physical injuries to his brother Nethaniel Bluth.

15.     Plaintiff Yigal Amihai Bluth is and was a United States national at the time of the March 7, 2002 attack and is a brother of Nethaniel Bluth. He suffered severe emotional distress from the physical injuries to his brother Nethaniel Bluth.

16.     Plaintiff Arieh Yehuda Bluth is and was a United States national at the time of the March 7, 2002 attack and is a brother of Nethaniel Bluth. He suffered severe emotional distress from the physical injuries to his brother Nethaniel Bluth.

17.     Plaintiff Chanina Samuel Bluth is and was a United States national at the time of the March 7, 2002 attack and is a brother of Nethaniel Bluth. He suffered severe emotional distress from the physical injuries to his brother Nethaniel Bluth.

18.     Plaintiff Abraham Bluth is and was a United States national at the time of the March 7, 2002 attack and is a brother of Nethaniel Bluth. He suffered severe emotional distress from the physical injuries to his brother Nethaniel Bluth.

19.     Plaintiff Joseph Bluth is and was a United States national at the time of the March 7, 2002 attack and is a brother of Nethaniel Bluth. He suffered severe emotional distress from the physical injuries to his brother Nethaniel Bluth.

## DEFENDANTS

20.     Defendant Islamic Republic of Iran ["Iran"] is a foreign state which at all times alleged hereinafter was designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405 (J)).

21. Defendants Iranian Ministry of Information and Security ("MOIS") and the Iranian Revolutionary Guards Corps ("IRGC") are agencies of Defendant Iran, responsible for providing the military and intelligence services through which Iran trained, supported, and otherwise guided and directed the terrorist organizations responsible for causing Plaintiffs' injuries and trauma as described hereinafter.

## HAMAS

22. Harakat al-Muqawamah al-Islamiyya is Arabic for "The Islamic Resistance Movement" and is known by its acronym of Hamas ("Hamas"). The Hamas organization is based in the West Bank and Gaza Strip areas of Israel.

23. In 1995, the U.S. government designated Hamas a "Specially Designated Terrorist" entity, at which time its assets subject to U.S. jurisdiction were blocked by Executive Order 12947 and implementing regulations. The Executive Order prohibits transactions, including financial transactions, with organizations and individuals so designated. Former Hamas Political Bureau Chief and current Deputy Chief Mousa Abu Marzook was designated as a Specifically Designated Terrorist on August 29, 1995.

24. On October 8, 1997, Hamas was designated a Foreign Terrorist Organization by the U. S. Secretary of State pursuant to 8 U.S.C. §1189, by publication in the Federal Register. As of that date it became unlawful to provide material support and resources, including currency or monetary instruments, financial services, personnel, transportation, and other provisions to any component of Hamas.

25. Hamas achieves its stated goals through both a military and a social wing. The military wing, called Izzadin al-Qassam Brigades, carries out suicide bombings and other attacks

21. Defendants Iranian Ministry of Information and Security ("MOIS") and the Iranian Revolutionary Guards Corps ("IRGC") are agencies of Defendant Iran, responsible for providing the military and intelligence services through which Iran trained, supported, and otherwise guided and directed the terrorist organizations responsible for causing Plaintiffs' injuries and trauma as described hereinafter.

## HAMAS

22. Harakat al-Muqawamah al-Islamiyya is Arabic for "The Islamic Resistance Movement" and is known by its acronym of Hamas ("Hamas"). The Hamas organization is based in the West Bank and Gaza Strip areas of Israel.

23. In 1995, the U.S. government designated Hamas a "Specially Designated Terrorist" entity, at which time its assets subject to U.S. jurisdiction were blocked by Executive Order 12947 and implementing regulations. The Executive Order prohibits transactions, including financial transactions, with organizations and individuals so designated. Former Hamas Political Bureau Chief and current Deputy Chief Mousa Abu Marzook was designated as a Specifically Designated Terrorist on August 29, 1995.

24. On October 8, 1997, Hamas was designated a Foreign Terrorist Organization by the U. S. Secretary of State pursuant to 8 U.S.C. §1189, by publication in the Federal Register. As of that date it became unlawful to provide material support and resources, including currency or monetary instruments, financial services, personnel, transportation, and other provisions to any component of Hamas.

25. Hamas achieves its stated goals through both a military and a social wing. The military wing, called Izzadin al-Qassam Brigades, carries out suicide bombings and other attacks

within Israel, the West Bank, and Gaza. These attacks target civilians and have resulted in deaths and physical injuries to thousands of civilian men, women, and children including Plaintiff Nethaniel Bluth. The "social" wing conducts indoctrination, recruitment, and funding for the military wing.

## STATEMENT OF FACTS

### Iran's Provision of Material Support and Resources to Hamas

26. Relations between Iran and Hamas were formalized in 1988, when Iran accepted a Hamas diplomatic delegation and established official relations.

27. In 1992, Israel deported approximately 400 Hamas operatives from the Gaza Strip to Lebanon. While in Lebanon, these Hamas operatives were provided with military and terrorist training by Defendant IRGC and by Hezbollah members who were trained and sponsored by Defendant Iran.

28. Hamas members in Lebanon were trained in ambush techniques, kidnapping, methods of subterfuge, and a broad range of firearms, bombing, and weapons training. This training continued until late 1993 when nearly all of the newly trained Hamas terrorists returned to the West Bank and Gaza.

29. Iran also trained Hamas operatives at a large military camp near Tehran, Iran, called "Al Quds". In 1994, a group of 19 Hamas members spent three and one-half months in intensive military exercises led by MOIS.

30. Beginning in the early 1990s and continuing to the present, Iran has given Hamas many millions of dollars over the years to build an operational infrastructure from which to carry out terrorist activities in Israel. In 1996 and 1997 alone, Iran provided Hamas with between $25

million and $50 million dollars, and those sums only have increased over the past decade and a half.

31. Iran rewarded Hamas financially after terrorist actions occurring in Israel or against Israeli citizens, particularly for those of a spectacular nature such as suicide bombings. At all times relevant to this action, Iran provided material support and resources to Hamas, including funding, direction, and training.

32. MOIS, at all times relevant to this action, has operated Iran's intelligence service and has functioned both within and beyond the borders of Iran. Iran has long funneled through MOIS most of the funding it makes available to support terrorism. MOIS, acting through the scope of its agency, performed acts and caused the performance of acts by Hamas, including death, personal injury, hostage taking, torture, and emotional distress.

**March 7, 2002 Terrorist Attack**

33. At approximately 11:30 p.m. on March 7, 2002, Muhammad Parhat, a 19 year-old member of Hamas's Izzadin al-Qassam military brigade, cut through the fence on the southern Gaza Strip and began firing gunshots and throwing grenades at an educational center in the center of Atzmona.

34. The terrorist attack perpetrated by Muhamad Parhat killed five people and wounded over 23 others, including Nethaniel Bluth.

35. At the time of the attack, Nethaniel Bluth was sitting within a classroom with approximately 40 other students. Upon looking out the window to see the nature of the explosions, Nethaniel Bluth saw his friend Asher Markus running towards the building as Muhammad Parhat was firing bullets and throwing grenades in the direction of the classroom.

36. Upon opening the door for Asher Markus, Nethaniel Bluth was hit with numerous bullets causing him to fall to the floor. A grenade thrown into the classroom landed approximately 3 meters from Nethaniel Bluth, causing shrapnel to be lodged into his body and resulting in the loss of hearing in both ears.

37. During the course of the attack, and during the transport to the hospital, Nethaniel Bluth personally witnessed the death of his friends Asher Markus, Eran Picard, and Arik Robiak.

38. Plaintiff Shoshana Bluth was lying in bed at the time of the March 7, 2002 attack. She was awoken by one of her sons, who informed her that there was a terrorist attack in Atzmona. An hour passed before Shoshana Bluth was informed that Nethaniel was among those injured in the attack and that he was being transported to the hospital. During the drive to Tel Hashomer Hospital, Shoshana Bluth learned that her son had been seriously injured. Upon arriving at the hospital, Shoshana Bluth found her son covered in blood and in critical condition. Shoshana Bluth suffered severe emotional distress as a result of not knowing whether her son had survived. Shoshana Bluth continues to suffer from anxiety, nightmares, and extensive emotional distress about her children.

39. Ephraim Bluth was in the United States on a business trip when he received a call from his wife that there was an attack in Atzmona. An hour and a half passed until Ephraim Bluth was informed that his son Nethaniel was injured, however, he did not know at that time the extent of the injury. It was not until later that Ephraim Bluth learned that his son was seriously injured. Ephraim Bluth was not able to get home to Israel and see his family and Nethaniel until Monday, March 11, 2002. Upon arrival at the hospital, Ephraim Bluth found his son still with open wounds and in serious condition. Ephraim Bluth suffered and continues to suffer severe emotional distress as a result of the attack against his son.

40. Tsipora Batya Bluth Reicher was informed of the attack in Atzmona while watching television. Despite desperate attempts to call Nethaniel's friends in Atzmona, she was unable to get any update on her brother's condition. An hour had passed before Tsipora was informed that her brother had been injured in the attack. It took the family over 45 minutes to drive to Tel Hashomer Hospital and the entire time they were worried that Nethaniel was dead. While in the waiting room at the hospital, Tsipora recognized that one of the dead bodies being pushed through the hospital was Nethaniel's friend Eran Picard. When she finally saw her brother, he was covered in blood, full of scars, and crying. Tsipora Bluth has suffered and continues to suffer severe emotional distress as a result of the attack against her brother.

41. Isaac Menahem Bluth was informed of the attack in Atzmona while watching television at his parents' house. Isaac, 15 years old at the time, did not inform his mother of the attack as he did not want her to worry about Nethaniel. Isaac later learned that his brother had been injured and that the family would need to drive to Tel Hashomer Hospital. On the way to the hospital, his family learned that Nethaniel was seriously injured and Isaac feared his brother was dead. Isaac Bluth suffered and continues to suffer severe emotional distress as a result of the attack against his brother.

42. Yigal Amihai Bluth was at a wedding when he was informed by a friend that there had been an attack in Atzmona. Yigal could not receive any information about the attack or whether his brother was still alive. He called his mother, Shoshana Bluth, who asked him to come to her home and drive the family to Tel Hashomer Hospital. On the ride to the hospital, he learned that his brother was seriously injured. Yigal Bluth suffered and continues to suffer severe emotional distress as a result of the attack against his brother.

43. Arieh Yehuda Bluth was traveling in Poland with a group of fellow students when

he learned that there was an attack in Atzmona. Later that day, Arieh was able to speak with his family, who informed him that his brother Nethaniel was injured in the attack. At that time, Arieh believed his brother was dead and his family did not want to tell him over the phone. Arieh was not able to return to Israel for four days. Arieh Bluth suffered and continues to suffer severe emotional distress as a result of the attack against his brother.

44. Chanina Samuel Bluth was in the army when he was awoken by a call from his brother informing him that Nethaniel was injured in an attack in Atzmona and was being transported by helicopter to Tel Hashomer Hospital. Immediately, Chanina recognized that his brother was seriously injured. It took Chanina over two and a half hours to drive from his base to the hospital. Upon arrival at the hospital, Chanina found his brother covered in blood and open wounds. Chanina Bluth suffered and continues to suffer severe emotional distress as a result of the attack against his brother.

45. Joseph Bluth already was at Tel Hashomer Hospital awaiting the birth of his child at the time of the March 7, 2002 attack. While watching television at the hospital, Joseph Bluth saw a news report of the attack. The news showed a picture of a severely injured man wearing what appeared to be the same watch as his brother Nethaniel. After an hour and a half, Joseph Bluth learned that his brother was severly injured and would be transported to the emergency room at Tel Hashomer Hospital. Joseph Bluth met his family in the emergency room where he saw Nethaniel covered in blood and in serious condition. Joseph Bluth suffered and continues to suffer severe emotional distress as a result of the attack against his brother.

46. Abraham Bluth was serving in the Israeli army at the time of the March 7, 2002 attack. He received a call from his wife late in the night asking whether he had heard about the attack in Atzmona. Abraham Bluth immediately got in his car and began driving towards the

center of Israel. As he was driving, he was able to speak with his mother via telephone where he was told that Nethaniel was being transported to Tel Hashomer Hospital. It took Abraham three hours to reach the hospital where he found his brother covered in blood and in serious condition. Abraham Bluth suffered and continues to suffer severe emotional distress as a result of the attack against the brother.

47. Shortly after the shooting, the Izzadin al-Qassam military brigade of Hamas claimed responsibility for the attack.

48. Plaintiffs' injuries were caused by a willful and deliberate act of Hamas, acting under sponsorship and direction, and with material support and resources of the Defendants. Accordingly, Defendants are jointly and severally liable to Plaintiffs for their injuries under vicarious liability.

## COUNT I
## BATTERY CLAIMS OF NETHANIEL BLUTH

49. Plaintiff Nethaniel Bluth, a U.S. national inured in the March 7, 2002 attack, repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

50. On and before March 7, 2002, the Hamas organization provided material support and resources for a member of Hamas to commit extrajudicial killing at the educational center in the community of Atzmona in the Gush Katif region of the Gaza Strip, resulting in the willfull battering and injuring of Nethaniel Bluth. The bombing inflicted severe and permanent injuries with great pain and suffering, requiring extensive and continuing medical treatment and expenses including hospitalization, physician's services, nursing care, and rehabilitation treatment, and diminishing Plaintiff Nethaniel Bluth's earning capacity.

51. The willful, wrongful, and intentional acts of Hamas were funded and directed by Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security.

52. WHEREFORE, Nethaniel Bluth demands joint and several judgment under 28 U.S.C. § 1605A, against Defendants for battery in the amounts of $10,000,000.00 plus costs.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## OF NETHANIEL BLUTH

53. Plaintiff Nethaniel Bluth, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

54. As a direct and proximate result of the willful, wrongful, and intentional acts of Hamas, whose acts were funded and directed by Defendants Iran, MOIS, and IRGC, Plaintiff Nethaniel Bluth endured extreme mental anguish and pain and suffering, suffered the loss of his friends, and was subjected to intense physical injury, pain, discomfort, and inconvenience.

55. WHEREFORE, Nethaniel Bluth demands joint and several judgment under 28 U.S.C. § 1605A, against Defendants for intentional infliction of emotional distress in the amount of $10,000,000.00 plus costs.

## COUNT III
## SOLATIUM FOR INJURIES TO NETHANIEL BLUTH

56. Nethaniel Bluth's parents Shoshana and Ephraim Bluth, and his siblings Tsipora Batya Bluth Reicher, Chanina Samuel Bluth, Arieh Yehuda Bluth, Yigal Amihai Bluth, Isaac Menahem Bluth, Abraham Bluth, and Joseph Bluth each re-state all allegations set forth above as if first stated here.

57. Shoshana Bluth, Ephraim Bluth, Tsipora Batya Bluth Reicher, Chanina Samuel

Bluth, Arieh Yehuda Bluth, Yigal Amihai Bluth, Isaac Menahem Bluth, Abraham Bluth, and Joseph Bluth, all then and now U.S. nationals, suffered extraordinary grief and mental anguish as a direct and proximate result of their immediate family member Nethaniel Bluth's physical injuries in Defendants' terrorist attack.

58. Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community. Plaintiffs' emotional distress was so severe that no reasonable person could be expected to endure it.

59. WHEREFORE, each of Nethaniel Bluth's nine immediate family members (listed above in paragraphs 56 and 57) demands joint and several judgment against Defendants for solatium under 28 U.S.C. § 1605A in amounts as follows: Shoshana Bluth, $10,000,000.00; Ephraim Bluth, $10,000,000.00; Tsipora Batya Bluth Reicher, $10,000,000.00; Chanina Samuel Bluth, $10,000,000.00; Arieh Yehuda Bluth, $10,000,000.00; Yigal Amihai Bluth, $10,000,000.00; Isaac Menahem Bluth, $10,000,000.00, Abraham Bluth, $10,000,000.00, and Joseph Bluth, $10,000,000.00, plus costs for all.

## COUNT IV
## PUNITIVE DAMAGES

60. All Plaintiffs repeat each allegation above as if first alleged here.

61. The actions of the Defendants, intentionally carried out through their agents as described above, were malicious, willful, unlawful, and in wanton disregard of life and the standards of law that govern the actions of civilized nations. Defendants intended serious injuries to result from their actions and for the loved ones of those directly injured to be